Paul Tilles and Pauline Tilles v. Commissioner.
Tilles v. Commissioner
Docket No. 91716.
United States Tax Court
T.C. Memo 1963-299; 1963 Tax Ct. Memo LEXIS 48; 22 T.C.M. (CCH) 1577; T.C.M. (RIA) 63299; October 31, 1963
*48 Irving W. Ballen, 120 Broadway, New York, N. Y., AND Selwyn Nimaroff, for the petitioners. Edward H. Hance, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies have been determined by respondent in the income tax of petitioners for the taxable years 1955 and 1956 in the respective amounts of $10,878.34 and $18,178.43. The only issue to be decided is whether respondent has erred in refusing to permit capital gains treatment of certain amounts paid to Paul Tilles (hereinafter referred to as petitioner) under the terms of an agreement dated May 26, 1954, between him and Richmar Furniture Corporation. Findings of Fact All facts which have been agreed upon are so found. The petitioners herein reside in New York, New York. Their income tax returns for the years 1955 and 1956 were filed with the district director of internal revenue, Upper Manhattan, New York. The petitioners used a cash method of accounting. Petitioner was an employee of Michaels Brothers, Inc., from 1932 until April 1954 when all of the assets of Michaels Brothers, Inc., were sold to Richmar Furniture Corporation. Thereafter the name of Richmar Furniture *49 Corporation was changed to Michaels Brothers Corporation and petitioner became an employee thereof. The agreement of sale, dated April 20, 1954, between Michaels Brothers, Inc., and Richmar Furniture Corporation provided in paragraph 7 thereof that the buyer would assume the seller's contractual obligations with its employees. Further, paragraph 8 of an agreement between the stockholders of the selling and buying corporations which is a part of the agreement of sale and designated as Exhibit B provides that the stockholders of the seller, including petitioner, will execute general releases to the seller. Petitioner was an officer and stockholder of Michaels Brothers, Inc., at the time it sold its assets to Richmar Furniture Corporation. Petitioner executed a general release dated May 26, 1954, to Michaels Brothers, Inc. Under this release petitioner assigned all rights and claims he had with respect to his former employer. Petitioner also executed a release dated May 26, 1954, to Richmar Furniture Corporation (subsequently known as Michaels Brothers Corporation) in which he assigned all rights and claims that he had with respect to said corporation, except such rights as he *50 possessed under two employment agreements dated May 26, 1954, with Richmar Furniture Corporation his new employer. One of the two employment agreements referred to above is what will be referred to herein as the managerial contract and the other as the labor relations contract. Under the former, Richmar employed petitioner as an executive of that corporation in a managerial capacity for one year at a fixed salary of $31,000. Under the latter contract, petitioner's services as a labor relations consultant for a period of 10 years from and after April 20, 1954, at an agreed aggregate fee (which included "expenses and other charges of any nature or description") for such services of $105,000 which was "to be paid as billed by Tilles [petitioner] and approved by Richmar." All payments in controversy herein were received by petitioner in pursuance of the terms of the labor relations contract in accordance with his billings. Such payments were made $20,000 on May 24, 1955, $15,000 on July 25, 1955, and $34,621.98 on February 21, 1956. The remainder of the total amount of $105,000 was paid as the result of petitioner's billings over a period ending January 1, 1962, in six additional *51 payments. Petitioner had been continuously employed by Michaels Brothers, Inc., under written contracts and modifications thereof since June 16, 1938. By a modification of an existing employment agreement executed on February 27, 1948, petitioner's compensation, in addition to a fixed annual salary of $30,000, for the first time was agreed to be an amount equal to 4 percent of the net annual profits of Michaels in excess of $400,000. This modification also provided that, in the event of the sale of Michaels' assets or its merger, the employment contract would terminate and petitioner's rights to share in its profits would cease and he would thereupon be paid the lump sum of $30,000. On September 22, 1949, petitioner and Michaels entered into a new employment contract on the same general terms except that his fixed salary was changed to $31,000 per year and his terminal pay in case of Michaels' sale of its assets or merger was advanced to $50,000. This contract superseded the former and extended the period of his employment to 5 years. Before the expiration of 5 years, on December 22, 1950, the last contract was amended by fixing petitioner's share of profits at 4 percent of all net *52 profits to the amount of $400,000, 2 percent of the next $400,000 of net profit, and 1 percent of the excess net profit over $800,000. This modification also extended his period of employment to 10 years and 6 months, terminating on June 30, 1961, and was in full force and effect as of the date of the sale of Michaels' assets to Richmar. Ultimate Findings At no time covered by this record did petitioner have a right "to receive, after termination of his employment" by either Michaels or Richmar "for a period of not less than 5 years (or for a period ending with his death), a percentage of future profits or receipts" of either. Opinion The issue whether amounts paid the petitioner during the years here involved in pursuance of his labor relations contract with Richmar are to be treated as capital gain or ordinary income is governed by section 1240 of the Internal Revenue Code of 1954. [1] But for that section of the Code there can be no doubt that such receipts could be treated only as ordinary income ( Lucas v. Earl, 281 U.S. 111), and it is therefore incumbent upon petitioner to bring himself clearly within the statutory language. *53 The parties, on brief, argue many aspects of this Code provision, but we think failure of the petitioner to substantiate his position with respect to only one is fatal and therefore do not discuss more than the one such failure set forth in our ultimate finding above. Petitioner takes the position that his labor relations contract with Richmar is to be treated as a substitute or continuation of his last employment agreement with Michaels. He contends that, because the Michaels contract provided for a share in its profits, the substitute therefore should be treated as a profit sharing agreement. After a careful consideration of each of the employment contracts in evidence, we are unable to conclude that petitioner's right to share in the profit of either Michaels or Richmar extended beyond the termination date of his employment by either. It is only with respect to amounts received on the assignment or release of such rights (extending beyond a period of employment by the contracting employer) that section 1240 grants capital gains treatment. Decision will be entered for the respondent. Footnotes
1. SEC. 1240. TAXABILITY TO EMPLOYEE OF TERMINATION PAYMENTS. Amounts received from the assignment or release by an employee, after more than 20 years' employment, of all his rights to receive, after termination of his employment and for a period of not less than 5 years (or for a period ending with his death), a percentage of future profits or receipts of his employer shall be considered an amount received from the sale or exchange of a capital asset held for more than 6 months if - (1) such rights were included in the terms of the employment of such employee for not less than 12 years. (2) such rights were included in the terms of the employment of such employee before the date of enactment of this title, and (3) the total of the amounts received for such assignment or release is received in one taxable year and after the termination of such employment.↩